**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DJIME TRAORE, | Civil Action No. 26-118 (ZNQ) |
| Petitioner, | |
| v. | **MEMORANDUM OPINION** |
| LUIS SOTO, *et al.*, | |
| Respondents. | |

**QURAISHI, District Judge**

This matter comes before the Court on Petitioner's request for release following his bond hearing before an immigration judge. (*See* ECF Nos. 14, 19.)  The Government has responded to these arguments.  (ECF Nos. 16, 18, 20.)  For the following reasons, Petitioner's requests shall be granted, and the Government shall be directed to release Petitioner within the state of New Jersey.

Petitioner is a native and citizen of Mali who "presented himself at the U.S.-Mexico border to request asylum" in January 2024.  (ECF No. 1 at 2.)  Petitioner was "processed, served with a Notice to Appear and then released."  (*Id.*)  Petitioner thereafter remained at liberty in the United States until December 29, 2025, when he was taken into custody following a scheduled appointment with immigration officials.  (*Id.*)  The Government sought to hold Petitioner without bond under 8 U.S.C. § 1225(b)(2).  (*Id.*)

On January 6, 2026, Petitioner filed a habeas petition challenging his confinement without bond.  (*Id.*)  Petitioner did not initially pay the applicable filing fee.  (ECF Docket Sheet.)  On January 13, 2026, Petitioner paid the fee at approximately 1 p.m.  (*Id.*)  Prior to Petitioner paying the fee and the Court's review of his habeas petition, however, Petitioner had already been

1

transferred out of New Jersey by immigration officials to a facility in Mississippi. (*See* ECF No. 16-2 at 1.) On January 16, 2026, following the Court's screening of Petitioner's habeas petition, this Court, in accordance with its prior decision in *Valerio v. Joyce*, No. 25-17225, 2025 WL 3251445 (D.N.J. Nov. 21, 2025), determined that Petitioner had been improperly detained without bond under § 1225(b)(2), and ordered that Petitioner be provided the bond hearing to which he was entitled under 8 U.S.C. § 1226(a) and its implementing regulations within ten days. (ECF No. 4.)

On January 22, 2026, in accordance with this Court's order, the Government scheduled a bond hearing for Petitioner before an immigration judge in Houston, Texas. (*See* ECF No. 18-1 at 1.) At that hearing, Petitioner's counsel requested to temporarily withdraw the request for bond in order to have more time to prepare evidence in support of his request for bond. (*Id.* at 3.) That bond hearing was ultimately rescheduled for February 25, 2026. (*See* ECF No. 18-2.) At that bond hearing, and after reviewing Petitioner's evidence, the immigration judge in Houston found that Petitioner was "not a flight risk and does not have a criminal history in the United States" sufficient to present a danger to the community, but ultimately determined that he lacked jurisdiction to grant bond in light of the intervening decision of the Court of Appeals for the Fifth Circuit in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (2026). (*See* ECF No. 18-2 at 9.) The Houston immigration judge therefore ultimately denied Petitioner bond for lack of jurisdiction. (ECF No. 14.) The Government sought reconsideration of that order in light of this Court's Order directing that Petitioner be provided a bond hearing, but the Houston immigration judge denied that request. (*See* ECF No. 20 at 2.)

The Government, seeking to comply with this Court's Order requiring a bond hearing, thereafter scheduled Petitioner for a new bond hearing before an immigration judge in Elizabeth

New Jersey, which was held on telephonically on March 3, 2026. (ECF No. 18-3 at 1.) At that hearing, Petitioner requested that the Elizabeth judge consider the bond filings he had made before the judge in Houston and grant Petitioner release on bond. (*Id.* at 4.) The immigration judge agreed to consider that filing as the operative bond request, and reviewed Petitioner's application. (*Id.* at 6-7.)

During this bond hearing, the Government argued that the immigration judge should deny bond because Petitioner had not met his burden to show that he was not a flight risk. (*Id.* at 7.) The Government premised this argument on a lack of clear employment and tax records, Petitioner's speculative basis for asserting he was likely to receive relief from removal, and a lack of "concrete" evidence showing that Petitioner had ties to the community. (*Id.*) The Government did not argue that Petitioner presented a danger to the community. (*Id.*)

In response, petitioner contended that Petitioner had properly presented himself at the border rather than "sneak[ing] . . into the country", that he had a job with DoorDash, had a fixed address in New York, had no criminal history, and had family members in New York including an aunt who was a lawful permanent resident and was willing to sponsor Petitioner, as well as several cousins in the country. (*Id.* at 7-8.) Counsel also noted that Petitioner had complied with ICE check-in requirements during his prior period of liberty. (*Id.* at 8.)

The immigration judge, however, rejected those arguments, stating as follows:

> The Court's going to deny bond on flight risk. The Court finds [Petitioner] has some letters, but there's no proof of family relationship. There's no proof of . . . ability to support [Petitioner]. The tax returns submitted [show] very little income for . . . the person alleged to be [Petitioner's] aunt and a child of hers and not enough to even support them – never mind [Petitioner]. Other than that, there are very few family ties other than people who are stating they're cousins of his. And so, for these reasons, the Court denies bond for flight risk.

3

(*Id.* at 8.)

In response, Petitioner's counsel argued that he had provided evidence of family relationships and was unaware of what evidence, beyond the letters and shared names, would establish those relationships to the immigration judge's satisfaction. (*Id.* at 9.)  Counsel also argued that even if his family could not fully support him, Petitioner had a work permit and had worked prior to his arrest, and could return to work to support himself or at least help his sponsor do so. (*Id.*)  Counsel also contended that release with an ankle monitor would adequately address the flight risk. (*Id.*)  The immigration judge rejected these arguments without further comment on the evidence. (*Id.*)

In light of this history, Petitioner now contends that the bond hearing he received in March in New Jersey was fundamentally unfair. (ECF No. 19.)  Specifically, Petitioner argues that the immigration judge required excess proof of familial relationship in requesting more than mere letters to support claims of family ties; discounted Petitioner's evidence of family, income, and residence; and reached a "clearly erroneous" decision on the merits by finding Petitioner to be a flight risk based on extraneous factors.

While a reviewing court may not reconsider an immigration judge's merits determinations or resolve disputes over the immigration judge's decision on how to weigh the evidence presented at a bond hearing, this Court retains jurisdiction to determine whether Petitioner received "a fundamentally fair bond hearing." *Ghanem*, 2022 WL 574624 at *2.  "In a fundamentally fair bond hearing, due process has three essential elements.  'An alien is (1) entitled to factfinding based on a record produced before the decisionmaker and disclosed to [the alien]; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized

4

determination of his . . . interests.'" *Id.* (quoting *Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005)).

In this matter, the immigration judge denied Petitioner's request for bond largely based on her contention that Petitioner had not adequately proven his family ties to establish strong ties to the local community. The legitimacy of Petitioner's family relations, however, do not appear to have been in dispute between Petitioner and the Government. The immigration judge's determination thus seemed focused not on the evidence submitted in the record, but rather on her apparent excessive need to evaluate the specifics of Petitioner's family structure.

More troubling, the Elizabeth immigration judge's findings were directly in contrast to the Houston judge's specific and on the record determination that Petitioner was "not a flight risk." (ECF No. 18-2 at 9.) No effort was made to distinguish this determination or explain why the Elizabeth judge disagreed with that finding. Petitioner was thus placed in the untenable position of both specifically being found not to be a flight risk while at the same time apparently failing to adequately prove that point which had already been determined on the record at the initial bond hearing. (ECF No. 18-3 at 8-10.) Nothing the Government has argued or provided in this matter indicates that the Elizabeth judge was free to act upon a clean slate when specific factual, relevant, and determinative conclusions had already been made by the prior immigration judge.

Finally, the Court also notes that the hearing before the immigration judge in Elizabeth was held on short notice – the morning after counsel for Petitioner was informed of its scheduling. (*See* ECF No. 18-3 at 6.) At the time the bond hearing commenced, neither the attorney for the Government nor the immigration judge had reviewed the bond filing Petitioner had previously submitted before the Houston immigration judge, and instead proceeded based on a cursory review of the provided documents during the brief bond hearing itself. (*Id.* at 4-5.) The record is at best

unclear whether the immigration judge actually reviewed the documents in question in detail before reaching her conclusion, and it instead appears that she merely skimmed the documents in denying Petitioner bond.

Taking all of these issues together – the essentially extraneous concern over Petitioner's family relations, the lack of any attempt to distinguish or walk back the Houston immigration judge's findings on the record, and the immigration judge's brief and apparently cursory review of Petitioner's provided evidence, this Court cannot determine that Petitioner received an adequate bond hearing in which an immigration judge made an individualized determination of Petitioner's interests on the face of the record produced before the immigration judges in Petitioner's two bond hearings. Petitioner's bond proceedings were thus not fundamentally fair, and Petitioner is entitled to relief in this matter. *Ghanem*, 2022 WL 574624 at *2.

Turning to the question of the appropriate relief in this matter, the Court notes that Petitioner was initially taken into custody and held pursuant to an erroneous interpretation of 8 U.S.C. § 1225(b)(2) which this Court has repeatedly rejected. (*See* ECF No. 4.) While Petitioner may ultimately be lawfully subjected to further detention under 8 U.S.C. § 1226(a) were he properly detained under that statute and given a fundamentally fair bond hearing, Petitioner was neither taken into custody under the auspices of that statute, nor provided an adequate bond hearing sufficient to bring his current detention into line with the requirements of § 1226(a) and its implementing regulations. This Court thus finds that release would be the appropriate remedy in this matter. *See Fajardo-Nugra v. Soto*, No. 26-975, 2026 WL 579192, at *2 (D.N.J. Mar. 2, 2026).

The Government shall therefore be ordered to return Petitioner to New Jersey and to release him from custody.[1]  An appropriate order follows.

Date: April 15, 2026

_____
s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[1] Although the Court will order Petitioner's release, because Petitioner's counsel during the bond hearing in New Jersey conceded that ankle monitoring would be an acceptable and reasonable compromise in his case (*see* ECF No. 18-3 at 9), the Court will permit the Government to impose that condition if it so chooses.