**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DJIME TRAORE,<br>*Petitioner*,<br>v.<br>LUIS SOTO, *et al.*,<br>*Respondents*. | Civil Action No. 26-118 (ZNQ)<br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court on Petitioner Djime Traore's ("Petitioner") Motion for Attorney's Fees and Costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (the "Motion"). (ECF No. 24.) Respondents Luis Soto, Todd M. Lyons, Kristi Noem, and Pam Bondi (collectively, the "Government") oppose the Motion and ask the Court to accept their opposition, which was filed eight days late, *nunc pro tunc*. (ECF No. 25.) Petitioner has not replied. The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the following reasons, the Government's request shall be granted, and the Motion shall be denied.

## I. BACKGROUND

Petitioner is a native and citizen of Mali who entered the United States on or about October 1, 2024, without being admitted or paroled. (ECF No. 1 ¶¶ 2, 26.) He was "processed, served with a Notice to Appear and then released." (ECF No. 21 at 1 (quoting ECF No. 1 at 2).) On December 29, 2025, Petitioner was taken into custody following a scheduled appointment with immigration

officials, and the Government sought to hold him without bond under 8 U.S.C. § 1225(b)(2). (*Id.*) Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 on January 6, 2026. (ECF No. 1.) Before the Court reviewed the Petition, immigration officials had transferred Petitioner from New Jersey to a facility in Mississippi. (ECF No. 21 at 1–2.)[1]

On January 16, 2026, relying on its decision in *Valerio v. Joyce*, No. 25-17225, 2025 WL 3251445 (D.N.J. Nov. 21, 2025), and other decisions in this District, the Court held that Petitioner was subject to detention under 8 U.S.C. § 1226(a) and ordered the Government to provide him an individualized bond hearing before an immigration judge within ten days. (ECF No. 4.) The Government scheduled a hearing in Houston, Texas, for January 22, 2026, at which Petitioner's counsel withdrew the bond request pending additional evidence. (ECF No. 21 at 2; ECF No. 18-1 at 3.) On February 6, 2026, the Fifth Circuit decided *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). At the rescheduled hearing on February 25, 2026, the Houston immigration judge found that Petitioner was "not a flight risk and does not have a criminal history in the United States," but concluded that, because Petitioner was detained within the Fifth Circuit, *Buenrostro-Mendez* deprived him of jurisdiction to grant bond. (ECF No. 21 at 2 (quoting ECF No. 18-2 at 9); ECF No. 18-2 at 9–10.) DHS counsel had argued at that hearing that *Buenrostro-Mendez* foreclosed bond, (ECF No. 18-2 at 4–5), but the Government moved for reconsideration in light of this Court's Order the next day and informed this Court, and the Houston immigration judge denied reconsideration on March 2, 2026. (ECF No. 21 at 2; ECF No. 11; ECF No. 13-1.) The Government then scheduled a new hearing before an immigration judge in Elizabeth, New Jersey, which was held remotely on March 3, 2026, and at which bond was denied on flight-risk grounds.

[1] The Government's April 15 submission describes Petitioner's border encounter as occurring in January 2024. (ECF No. 21 at 1.) That appears to reflect a different reading of the date listed in the Petition. The Petition's paragraph 26, the attached Notice to Appear, and the Government's EAJA opposition identify October 1, 2024, as the date of entry. (ECF No. 1 ¶ 26; ECF No. 1 at 21; ECF No. 25 at 2.) The discrepancy does not affect the Court's analysis.

(ECF No. 21 at 2–3; ECF No. 18-3 at 8.) Petitioner separately argued that the Government had violated the Court's directive not to transfer him out of New Jersey. (*See* ECF Nos. 14, 15.) The Government responded with sworn declarations that ICE transferred Petitioner to Mississippi on January 13, 2026, three days before the directive issued, and that the U.S. Attorney's Office transmitted the directive to ICE the day it was entered. (ECF No. 16; ECF No. 16-1 ¶¶ 3–4; ECF No. 16-2 ¶¶ 3–4.)[2]

On April 15, 2026, the Court concluded that Petitioner's bond proceedings were not fundamentally fair and that release was the appropriate remedy because Petitioner had been taken into custody under § 1225(b)(2) rather than § 1226(a) and had not thereafter received a hearing sufficient to bring his detention into line with § 1226(a). (ECF No. 21 at 4–7.) The Court observed that the Government, "seeking to comply with this Court's Order," had scheduled the further hearing in New Jersey. (*Id.* at 2.) The accompanying Order granted the Petition, permanently enjoined the Government from detaining Petitioner under § 1225(b)(2), set deadlines for any fee application and response, and directed the Clerk to close the file. (ECF No. 22.)

Petitioner filed the Motion on April 29, 2026, within the fourteen days the Court's Order allowed. (ECF Nos. 22, 24.) The Motion consists of a Notice of Motion, a declaration of Petitioner's counsel, Frederic Aurelien, Esq., and a proposed order. (ECF Nos. 24, 24-1, 24-2.) It seeks $7,875.00 in fees and costs, plus additional fees incurred in litigating the Motion, and requests a cost-of-living adjustment and an additional $250.00 per hour above the inflation-adjusted statutory rate based on asserted special factors. (ECF No. 24 at 1; ECF No. 24-1 at 2–3.) The Notice of Motion refers to an accompanying memorandum of law, and the Declaration refers to an "Exhibit A" containing counsel's time entries, but neither appears on the docket, and no

[2] Although the Government's April 15 submission describes the hearing as telephonic, the transcript and the Government's contemporaneous submission reflect that it was conducted by video conference. (ECF No. 18-3 at 3; ECF No. 13 at 2.)

statement of Petitioner's net worth has been filed. (*See* ECF No. 24; ECF No. 24-1 ¶ 2.)[3] Petitioner did not file a reply. The Government filed its opposition on May 14, 2026, eight days after the May 6, 2026 deadline set by the Court's Order, and asked that it be accepted *nunc pro tunc* because of a calendaring error. (ECF No. 25 at 1; *see* ECF No. 22.) The Government argues that its position was substantially justified or, alternatively, that special circumstances make an award unjust. (ECF No. 25 at 3–6.)

## II. LEGAL STANDARD

The EAJA provides that a court shall award a prevailing party fees and other expenses incurred in a civil action brought by or against the United States unless "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). An applicant must, within thirty days of final judgment, submit an application that shows he is a prevailing party and is eligible to receive an award, states the amount sought, includes an itemized statement of the actual time expended and the rate at which fees were computed, and alleges that the position of the United States was not substantially justified. *Id.* § 2412(d)(1)(B). The Third Circuit has held that habeas challenges to immigration detention under 28 U.S.C. § 2241 are "civil actions" for purposes of the EAJA. *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 425, 432 (3d Cir. 2026), *petition for cert. filed*, No. 26-145 (U.S. July 30, 2026). The Supreme Court has since granted *certiorari* in a case presenting the same question. *Montoya Palacios v. Liggins*, No. 25-1223 (U.S. June 29, 2026) (granting certiorari; argument set for Jan. 11, 2027). *Michelin* remains binding in this Circuit, and because

[3] Although counsel's Declaration refers to an accompanying Exhibit A containing time entries, no such exhibit was filed with the Motion. The docket reflects only the Notice of Motion, Declaration, and proposed Order. (ECF Nos. 24, 24-1, 24-2.)

the Court resolves the Motion on grounds that do not depend on the answer to that question, it need not await the Supreme Court's decision.

The Government bears the burden of showing that its position was substantially justified. *Id.* at 433. A position is substantially justified if it is "justified to a degree that could satisfy a reasonable person," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), meaning it has a reasonable basis in both law and fact. *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993). The Government must show "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Cruz v. Comm'r of Soc. Sec.*, 630 F.3d 321, 324 (3d Cir. 2010) (quoting *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998)). The "position of the United States" includes both the underlying agency action and the position the Government takes in the ensuing litigation. 28 U.S.C. § 2412(d)(2)(D); *Michelin*, 169 F.4th at 433; *Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005). Substantial justification is determined on the basis of the record made in the civil action, 28 U.S.C. § 2412(d)(1)(B), and the inquiry yields a single determination for the case as a whole rather than an issue-by-issue accounting. *See Comm'r, INS v. Jean*, 496 U.S. 154, 158–62 (1990). The applicant, for his part, bears the burden of documenting that the fees he seeks are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983).

A court may not presume that the Government's position lacked substantial justification merely because the Government lost. *Michelin*, 169 F.4th at 433 (quoting *Williams v. Astrue*, 600 F.3d 299, 302 (3d Cir. 2009)). The question is distinct from the merits: a position the Court rejected may still have been substantially justified. *See Kiareldeen v. Ashcroft*, 273 F.3d 542, 554 (3d Cir. 2001).

## III. DISCUSSION

### A. The Government's Late Opposition

The Court's April 15, 2026 Order directed the Government to respond to any fee application within seven days of its filing, which made the Government's response due May 6, 2026. (ECF No. 22.) The Government filed on May 14, 2026, acknowledging a calendaring error, apologizing, and noting that Petitioner's counsel objects to the late filing. (ECF No. 25 at 1.) Petitioner has filed no written objection, reply, or other submission, and has identified no prejudice.

The Court may extend a deadline after it has expired where the party failed to act because of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). That determination is an equitable one that turns on the danger of prejudice, the length of the delay and its impact on the proceedings, the reason for the delay, and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see George Harms Constr. Co. v. Chao*, 371 F.3d 156, 163–64 (3d Cir. 2004) (applying the *Pioneer* factors under Rule 60(b)(1) and explaining that the reason for the delay does not necessarily outweigh the others). The reason for the delay here, a calendaring error within counsel's control, weighs against the Government. The remaining factors favor acceptance. The delay was eight days; the Motion was not set for decision until June 1, 2026; and, had the Court not shortened the response period, the Government's opposition would have been timely under Local Civil Rule 7.1(d)(2), which requires opposition papers at least fourteen days before the original motion day "unless the Court otherwise orders." Petitioner has not shown prejudice, and nothing suggests bad faith; counsel candidly acknowledged the error. Because the Government bears the burden on substantial justification, and because the Court is better served by deciding a fee application on a full adversarial record, the Court will consider the opposition. The Court nevertheless expects counsel to comply with the deadlines it sets.

**B. The Government's Position Was Substantially Justified**

The Government does not dispute that Petitioner is a prevailing party, and the Court agrees that he is: the Court granted the Petition and ordered his release. (ECF No. 21 at 7; ECF No. 22.) The question is whether the Government has carried its burden of showing that its position was substantially justified. Petitioner has offered no argument on the point. His counsel's declaration states only that counsel "had no choice but to file a Habeas corpus Petition to obtain his release since the government claimed he was not eligible for bond." (ECF No. 24-1 ¶ 3.) The Court has nevertheless considered the question on the record made in the underlying action, as the statute requires. 28 U.S.C. § 2412(d)(1)(B).

***1. The Detention Decision.*** The dispositive question in the underlying matter was whether 8 U.S.C. § 1225(b)(2)(A), which provides that "in the case of an alien who is an applicant for admission" who is not clearly and beyond a doubt entitled to admission "the alien shall be detained" pending removal proceedings, reaches a noncitizen who entered without inspection and was apprehended in the interior. Section 1225(a)(1) defines "applicant for admission" to include a noncitizen present in the United States who has not been admitted. 8 U.S.C. § 1225(a)(1). It is undisputed that Petitioner entered without being admitted or paroled. (ECF No. 1 ¶ 2.) The Government therefore had a reasonable factual basis for treating him as an applicant for admission, and a reasonable connection between that fact and its legal theory. The Supreme Court has described § 1225(b) as a mandatory detention regime for covered applicants for admission, *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018), and although *Jennings* did not resolve whether § 1225(b)(2) reaches individuals like Petitioner, it supplies authority relevant to the Government's reading.

More importantly, when ICE detained Petitioner in December 2025, the Board of Immigration Appeals had held in September 2025 that immigration judges lack authority to

conduct bond hearings for noncitizens who are present without admission and are detained under § 1225(b)(2). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). That decision binds the Government at the administrative level. (ECF No. 25 at 4.) A position that follows a precedential agency decision on the precise question presented has a reasonable basis in law, and courts in this District have so held in denying EAJA fees in comparable circumstances. *See, e.g.*, *Hernandez Diaz v. Bondi*, No. 26-46, 2026 WL 1213196, at *2 (D.N.J. May 4, 2026); *Tyagi v. Soto*, No. 26-962, 2026 WL 1052894, at *2–3 (D.N.J. Apr. 20, 2026); *Martinez Amaya v. Bondi*, No. 26-1945, 2026 WL 1078278, at *2–3 (D.N.J. Apr. 21, 2026); *but see Kumar v. Soto*, No. 26-00203, 2026 WL 1458522 (D.N.J. Apr. 22, 2026) (granting EAJA motion in a § 1225(b)(2) case).

The Court recognizes that it rejected the Government's reading of § 1225(b)(2) before Petitioner was arrested, *see Valerio*, 2025 WL 3251445, and has done so repeatedly since. (ECF No. 21 at 6.) That weighs in Petitioner's favor. But a district court decision binds the Government only as to the parties before it, and the EAJA does not require the Government to abandon a position merely because district courts have rejected it. *See Hanover Potato*, 989 F.2d at 131. When Petitioner was detained on December 29, 2025, no court of appeals had resolved the question; the only contrary appellate authority was a divided Seventh Circuit panel's preliminary ruling, issued on December 11, 2025, on a motion to stay. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061–62 (7th Cir. 2025). While this matter was pending, the Fifth Circuit held on February 6, 2026, that § 1225(b)(2)(A) mandates the detention of noncitizens like Petitioner, *Buenrostro-Mendez*, 166 F.4th at 503, and the Eighth Circuit followed on March 25, 2026, *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026). The Houston immigration judge, whose court sits in the Fifth Circuit, treated *Buenrostro-Mendez* as binding and concluded that he lacked jurisdiction to grant bond. (ECF No. 18-2 at 9–10.) The contrary decisions of the Second, Sixth,

and Eleventh Circuits post-date this Court's April 15, 2026 judgment. (*See* ECF No. 25 at 2 (citing decisions issued April 28, May 6, and May 11, 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026).)

On August 28, 2026, after the Motion was filed and opposed, the Third Circuit held that § 1225(b)(2)(A) does not authorize mandatory detention of noncitizens who entered without inspection, have lived in the United States for years, and were later arrested in the interior, because such noncitizens are not "seeking admission" within the meaning of that provision. *Buele Morocho v. Warden Phila. FDC*, 189 F.4th 287, 307 (3d Cir. 2026). The Third Circuit thereby joined seven other courts of appeals and parted ways with two, *id.* at 294–95, and one member of the panel dissented, *id.* (Mascott, J., dissenting). That precedential decision now settles the question in this Circuit. But the EAJA asks whether the Government's position was substantially justified when it was taken, and a later appellate ruling does not by itself establish otherwise. *See Pierce*, 487 U.S. at 565. *See also Bowey v. West*, 218 F.3d 1373, 1377 (Fed. Cir. 2000) (substantial justification is measured against the law prevailing when the Government adopted its position); *Owen v. United States*, 861 F.2d 1273, 1274 (Fed. Cir. 1988) (en banc) (order) (later decision overruling authority on which the Government had relied did not render its position unjustified); *Hendricks v. Bowen*, 847 F.2d 1255, 1257 (7th Cir. 1988) (same). The Third Circuit ruled months after Petitioner's detention, after this Court's judgment, and after the Government filed its opposition. Although it declined to defer to the BIA's reading in *Yajure Hurtado*, *id.* at 11 n.8, that does not change the analysis, because the Government's officers were bound by that decision when they acted whether or not a court would defer to it. And although the Third Circuit described the Government's use of § 1225(b)(2)(A) against noncitizens like Petitioner as a shift in its enforcement practice, *Buele*

*Morocho*, 189 F.4th at 292, the question under the EAJA is whether the position the Government took was reasonable, not whether it was new. *Cf. Kiareldeen*, 273 F.3d at 547–48.

***2. The Litigation Position.*** The Court likewise concludes that the Government's litigation position was substantially justified. The Court resolved the statutory question at the screening stage on the strength of *Valerio*, before the Government answered, and the Government did not litigate that question at length. The Government complied with the Court's directive by scheduling a bond hearing within the time allowed. (ECF No. 21 at 2; ECF No. 18-1.) When the Houston immigration judge concluded that *Buenrostro-Mendez* deprived him of jurisdiction to grant bond, the Government reported that outcome to this Court the next day, moved for reconsideration, and, after reconsideration was denied, arranged a second hearing in New Jersey. (ECF No. 11; ECF No. 13 at 1–2; ECF No. 20 at 2.) And when Petitioner argued that the Government had violated the Court's no-transfer directive, the Government responded with sworn declarations establishing that the transfer occurred before the directive issued. (ECF Nos. 16-1, 16-2.) The Court's April 15 Opinion recognized that the Government was "seeking to comply" with its Order, (ECF No. 21 at 2), and made no finding that the Government disobeyed it.

In response to the Court's February 27, 2026 Text Order, the Government acknowledged that the Court retained jurisdiction despite Petitioner's transfer, *see* ECF No. 13 at 2 (citing *Khalil v. President, United States of America*, 164 F.4th 259, 271 (3d Cir. 2026)), and argued that the release ordered in *Hueso v. Soto*, No. 26-1455, rested on the individual merits of that case and that Petitioner had received the bond hearing § 1226(a) requires. (*Id.*) That position was consistent with the remedy the Court had ordered in *Valerio* and in its January 16 Text Order, namely a bond hearing, and the Court ultimately ordered release because of what happened at that hearing and because Petitioner had been taken into custody under the wrong statute. (ECF No. 21 at 6–7.)

The Government also contested Petitioner's argument that the March 3, 2026 bond hearing was fundamentally unfair. It argued that 8 U.S.C. § 1226(e) and the Third Circuit's non-precedential decision in *Ghanem v. Warden Essex County Correctional Facility*, No. 21-1908, 2022 WL 574624, at *2–3 (3d Cir. Feb. 25, 2022), bar this Court from reviewing an immigration judge's weighing of the evidence; that a hearing is fundamentally fair when the detainee receives factfinding on a disclosed record, an opportunity to be heard, and an individualized determination; and that Petitioner received each. (ECF No. 20 at 2–4.) That position had support in *Ghanem* and in decisions of other judges of this District. (*Id.* (collecting cases).) The Court ruled against the Government, but on a fact-bound review of the hearing record that is limited to whether Petitioner received a fundamentally fair hearing, not whether the immigration judge weighed the evidence correctly. (ECF No. 21 at 4–6.) The deficiencies the Court identified—the immigration judge's focus on proof of family relationships, the absence of any effort to reconcile the Houston findings, the short notice, and the apparently cursory review—were case-specific. The Court recognizes that the Government's submission did not address the Houston finding that Petitioner was not a flight risk, (*see id.* at 5), and that the short notice and the state of the bond record, which DHS's own counsel remarked upon at the hearing, (*see* ECF No. 18-3 at 4–6), weighed in the Court's analysis. But the Government's legal position — that the Court's review was narrow and that the process Petitioner received satisfied the elements the Third Circuit has identified — was reasonable, and the Court's conclusion that this particular hearing fell short does not show otherwise.

Nor does the remedy change the analysis. The Court ordered release, rather than a further hearing, because Petitioner had been taken into custody under § 1225(b)(2) rather than § 1226(a) and had not thereafter received a hearing sufficient to bring his detention into line with § 1226(a). (ECF No. 21 at 6–7.) That remedy therefore rested in significant part on the same unsettled

statutory question discussed above. Viewing the case as an inclusive whole, *see Jean*, 496 U.S. at 161–62, the Court concludes that the Government has shown that its position was substantially justified.

The Court emphasizes that nothing in this Opinion alters its merits determinations. The EAJA requires a separate inquiry, and "substantial justification" does not require that the Government have been correct. *Kiareldeen*, 273 F.3d at 554; *Michelin*, 169 F.4th at 433.

**C. The Application Is Also Incomplete**

Even if the Government's position had not been substantially justified, the Court could not award fees on this record. An applicant must submit, within thirty days of final judgment, an application that shows he is a prevailing party and is eligible to receive an award, states the amount sought, includes an itemized statement of the actual time expended and the rate at which fees were computed, and alleges that the Government's position was not substantially justified. 28 U.S.C. § 2412(d)(1)(B). An individual is eligible only if his net worth did not exceed $2,000,000 when the civil action was filed. *Id.* § 2412(d)(2)(B)(i). Petitioner's submission establishes that he prevailed and states the amount sought, but little else. It requests a lump sum of $7,875.00 without stating the hours worked or the hourly rates claimed (ECF No. 24-1 at 3); the "Exhibit A" time entries on which counsel's Declaration relies were not filed; no statement of net worth appears; and the Motion does not allege, much less argue, that the Government's position lacked substantial justification.

Counsel also seeks a cost-of-living adjustment and an additional $250.00 per hour above the inflation-adjusted statutory rate. (ECF No. 24-1 at 2.) The EAJA caps attorney's fees at $125 per hour unless the Court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher

rate. 28 U.S.C. § 2412(d)(2)(A)(ii). Counsel's one-sentence request identifies no basis for the enhancement beyond his experience in immigration law (ECF No. 24-1 ¶¶ 5–7), and without time records the Court has no means of computing an award at any rate. *See Hensley*, 461 U.S. at 433, 437 (requiring an applicant to document the hours worked and the rates claimed).

The Government did not raise these omissions, and they may be curable. *See Scarborough v. Principi*, 541 U.S. 401, 413–23 (2004) (holding that the EAJA's application-content requirements are not jurisdictional and that a timely application may be amended after the thirty-day period). The Court therefore does not rest its decision on them. But because the Government's position was substantially justified, allowing Petitioner to supplement his application would be futile.

### D. The Court Need Not Reach Special Circumstances

Because the Government's position was substantially justified, the Court need not decide whether special circumstances independently make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A); *Taylor v. United States*, 815 F.2d 249, 252 (3d Cir. 1987). The existence of either statutory exception defeats an EAJA application. 28 U.S.C. § 2412(d)(1)(A).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Government has established that its position, both in detaining Petitioner under 8 U.S.C. § 1225(b)(2) and in the ensuing litigation, was substantially justified within the meaning of 28 U.S.C. § 2412(d)(1)(A). The Government's request that the Court consider its late opposition *nunc pro tunc* shall be granted, and Petitioner's Motion for Attorney's Fees and Costs under the Equal Access to Justice Act (ECF No. 24) shall be denied.

An appropriate order follows.

Date: November 24, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**